Nash, J.
 

 The whole case turns upon the construction to be given to the Act, under which the action is brought. We do not concur with his Honor, in the view he has taken of it. The 4th section of the Act, is as follows :
 
 “
 
 In future, the commissioners of wrecks, shall be the only proper persons, to take charge of, advertise, or sell any vessel, cargo, or other wrecked property, that may be stranded or cast on shore, in their respective districts; provided that the owner, captain, merchant or consignee, or their agent, may, in the absence of the commissioner, &c. take charge of, or sell, or remove, such vessel, cargo, or other wrecked property.” The 5th section, under which this action is brought provides,
 
 “
 
 and any person, who shall interfere with the rights and privileges of any commissioner shall be liable to such commissioner, in an action on the case, for such damages as the commissioner shall sustain by reason of such interference. The act is obviously intended to prevent any officious intermedling with property so situated, by irresponsible persons. The commissioner is the officer of the law, to take the property into possession, and see justice done the owners. If others have assisted in saving it, in his absence, he may demand it of them, and a refusal on their part to deliver it is, a violation of his rights, for which an action may be sustained. But by the proviso, in the 4th section, recited above, the master, or owner, or merchant, or consignee, is not such an officious intermed-ler : to each is reserved the right, in the absence of the commissioner, to take charge of the stranded property. From the case we gather, that the captain did take possession of the goods in the
 
 absence
 
 of the commissioner,
 
 *102
 
 for it states, “ that the commissioner demanded of the defendant Kinsey, who was the captain, to be
 
 allowed to
 
 take into his custody the goods &c.” If they were not already in the possession of the captain, where was the necessity of any demand. If however the goods were not actually in the possession of any one, and the captain or owner, had refused to suffer the plaintiff to take them into his custody, and had himself taken possession, we do not believe his act would have been a tortious one. The Act of Assembly is badly drawn, and we must give to it such a construction as we think the Legislature intended, and which is to be gathered from all the language they use and the purposes of the Act. The goods then were rightfully in the possession of the defendant Kinsey, who was,
 
 pro hac vice,
 
 the owner. Does the Act require him to deliver them up to the commissioner upon his demand ? Surely not; to what purpose should he do it ? The latter part of the same section provides that “ every commissioner shall receive for selling any wrecked property five per cent. &c. and in case of the
 
 removal
 
 of any wrecked property by the owner, merchant, consignee, or their agent, from the custody of any commissioner without a sale, the commissioner shall receive two-and-a-half per cent, &e.” This two-and-a-half per cent, commissions are given to the commissioner, as a compensation for his trouble and the responsibility incurred by him in taking possession, or custody of the property. He did not take possession, or have the custody of the property, and therefore his Honor in his charge properly instructed the jury, that he was not entitled to any commission. But he further instructed them, that he was entitled to an action against the defendants for interfering with his rights. What rights ? The only right interfered with was the right, as it is alleged, to take the property out of the possession of the captain. And for what purpose? Not to secure them, not to sell them, but simply to entitle him to his commissions of two
 
 *103
 
 and a half per eent.; for the captain, if he had surrendered them, was at liberty, by the Act, immediately to withdraw them from the commissioner. Surely such was not the meaning of the Legislature. They could not have intended, to take from the unfortunate owner a portion of that which the sea had spared, and he had saved, to present it as a douceur to one, who had rendered no services and incurred no liability in saving the goods.
 

 If the principle contended for in this case, on the part of the plaintiff, be correct, it will lead to this result; that all the commissioner has to do, is to arrive after the goods have been all saved, by the captain or owner, demand the possession, and if delivered to him, he immediately re-delivers them back, and pockets his commissions; if refused, he does not pocket the commissions,
 
 eo
 
 nomine, but damages to their amount; for the rule of damages would be, the loss he would sustain by the nondelivery.
 

 We cannot believe such to be the true construction of the Act. The interference intended to be punished by the law, in damages, is an unlawful interference. The act of the captain in taking possession of the wrecked property, in this case, was a lawful act, and he was not bound to surrender them to the plaintiff, on his demand, His refusal to do so was no interference with any right or privilege secured to the plaintiff, and the other defendants who acted under his authority are protected by his immunity. The act was intended, not for the benefit of the commissioners of wrecks, but for that of the owners of the property. If, when the goods are stranded, there is no one of the persons enumerated in the act present, the law places the property in the hands of the commissioner, and no one can rightfully withhold it; if the captain or owner is present, and chooses to save the property without the aid of the commissioner, it cannot be the in
 
 *104
 
 tention of the Act, to forbid their so doing, or to punish them if they do.
 

 Per Curiam. Judgment reversed, and
 
 venire de novo
 
 awarded.